# 22-1209

IN THE
**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

———————————————————————

GILEAD COMMUNITY SERVICES, INC., CONNECTICUT FAIR HOUSING CENTER, INC.,

*Plaintiffs – Appellees,*

v.

TOWN OF CROMWELL,

*Defendant – Appellant,*

ENZO FAIENZA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS MAYOR OF THE TOWN OF CROMWELL, ANTHONY SALVATORE, INDIVIDUALLY AND IN HIS OFFICAL CAPACITY AS TOWN MANAGER OF THE TOWN OF CROMWELL, JILLIAN MASSEY, IN HER OFFICIAL CAPACITY AS THE ZONING ENFORCEMENT OFFICER OF THE TOWN OF CROMWELL,

*Defendants.*

———————————————————————

**FINAL FORM BRIEF OF APPELLEES GILEAD COMMUNITY SERVICES, INC. AND CONNECTICUT FAIR HOUSING CENTER, INC.**

———————————————————————

Tara K. Ramchandani
Yiyang Wu
Valerie Comenencia Ortiz
Gemma Donofrio
RELMAN COLFAX PLLC
1225 19th Street, NW Suite 600
Washington, D.C. 20036
(202) 728-1888

*Counsel for Appellees*

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

| | | |
|---|---|---|
| **GILEAD COMMUNITY SERVICES, INC., ET AL.** | ) ) ) | |
| **Plaintiffs/Appellees,** | ) ) | |
| **v.** | ) ) | **No. 22-1209** |
| **TOWN OF CROMWELL,** | ) ) | |
| **Defendant/Appellant.** | ) ) ) | |

## DISCLOSURE STATEMENT

Plaintiffs Gilead Community Services, Inc. ("Gilead") and Connecticut Fair Housing Center ("CFHC") hereby submit their corporate disclosure statements. Gilead states that The Connecticut Institute for the Blind, Inc. d/b/a Oak Hill is the sole member of Gilead. CFHC states that it is a non-profit organization that has no parent corporation, and in which no publicly traded company owns any interest.

Dated: December 13, 2022

/s/ Tara K. Ramchandani
Tara K. Ramchandani
RELMAN COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, DC 20036
Phone: (202) 728-1888
tramchandani@relmanlaw.com

*Counsel for Appellees*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF THE ISSUES ........................................................ 1

STATEMENT OF THE CASE .......................................................... 2

SUMMARY OF ARGUMENT ........................................................ 7

ARGUMENT ................................................................................. 9

I.   Standard of Review ................................................................. 9

II.  The District Court Properly Applied the Motivating Factor Causation Test to the Fair Housing Act, and Any Error Is Otherwise Harmless. ........................ 10

    A. Motivating Factor is the Proper Standard for Evaluating Causation Under the Fair Housing Act. ................................................. 11

        i.  Second Circuit Precedent Provides the Proper Standard. .................... 12

        ii. No Supreme Court Decision Alters the Causation Standard for FHA Claims ................................................................. 14

            a. Neither *Gross* nor *Nassar* Applies. ............................... 14

            b. *Comcast* Does Not Overrule Circuit Precedent on FHA Causation ................................................................. 16

        iii. Even If But-For Causation Applies to Title II of the ADA, the Jury's Verdict Should be Upheld Under the FHA. ........................... 23

    B. Should the Court Determine the Proper Standard for the Fair Housing Act Is But-For Causation, Any Error in the Jury Instruction Would Be Harmless. ................................................................. 28

        i.  But-For Causation Does Not Mean Sole-Factor Causation. ............... 29

        ii. But-For Causation Is Concerned with the Reasons Behind a Defendant's Actions, Not a Plaintiff's Damages. ................... 31

        iii. The Record at Trial Meets the But-For Causation Standard. ............. 33

i

C. Appellees' Section 3604(c) Claims Do Not Implicate Motivating Factor Causation. .................................................................................37

III. The District Court Properly Instructed the Jury on the Availability of Punitive Damages. ...........................................................................................38

A. The FHA Does Not Exempt Municipalities from Punitive Damages. ......39

B. The District Court Correctly Allowed the Jury to Consider Punitive Damages under the Facts of This Case. .........................................48

IV. The Jury's Well-Reasoned Punitive Damages Award Should Be Affirmed. .51

V. The Town of Cromwell Can Be Held Vicariously Liable For the Actions of its Employees, Officers, and Agents. ...............................................56

CONCLUSION .......................................................................................59

CERTIFICATE OF COMPLIANCE ........................................................61

CERTIFICATE OF SERVICE ................................................................62

## TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*431 E. Palisade Ave. Real Est., LLC v. City of Englewood*,
   977 F.3d 277 (3d Cir. 2020) ................................................................23

*A.G. v. Paradise Valley Unified Sch. Dist. No. 69*,
   815 F.3d 1195, 1203 n.5 (9th Cir. 2016) ............................................24

*Anderson Grp., LLC v. Lenz*,
   336 F. App'x 21 (2d Cir. 2009) (Summary Order) ............................57

*Barnes v. Gorman*,
   536 U.S. 181 (2002).....................................................41, 43, 44, 45

*BMW of North America, Inc. v. Gore*,
   517 U.S. 559, 575 (1996)...........................................................51, 52

*Bostock v. Clayton Cnty., Georgia*,
   140 S. Ct. 1731 (2020).................................................................*passim*

*Broome v. Biondi*,
   17 F. Supp. 2d 211 (S.D.N.Y. 1997) ..................................................56

*Cabrera v. Jakabovitz*,
   24 F.3d 372 (2d Cir. 1994) .........................................................*passim*

*Campos v. HMK Mortg., LLC*,
   458 F. Supp. 3d 517 (N.D. Tex. 2020) ...............................................22

*CBOCS W., Inc. v. Humphries*,
   553 U.S. 442 (2008).............................................................................19

*Chowdhury v. Worldtel Bangladesh Holding, Ltd.*,
   746 F.3d 42 (2d Cir. 2014) ..........................................................26, 27

*Ciraolo v. City of New York*,
   216 F.3d 236 (2d Cir. 2000) ...............................................................49

*City of Edmonds v. Oxford House, Inc.*,
   514 U.S. 725 (1995).............................................................................18

iii

*City of Newport v. Fact Concerts, Inc.*,
    453 U.S. 247 (1981)..................................................................*passim*

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
    140 S. Ct. 1009 (2020)............................................................*passim*

*Connecticut Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*,
    478 F. Supp. 3d 259 (D. Conn. 2020)...................................23

*Cook Cnty., Ill. v. U.S. ex rel. Chandler*,
    538 U.S. 119 (2003)..............................................................47

*Dadian v. Vill. Of Wilmette*,
    No. 98 C 3731, 1999 WL 299887 (N.D. Ill. May 4, 1999) ...............................41

*Deters v. Equifax Credit Info. Servs., Inc.*,
    202 F.3d 1262 (10th Cir. 2000) ...........................................53

*F.D.I.C. v. Hamilton*,
    122 F.3d 854 (10th Cir. 1997) .............................................55

*Floyd v. City of Sanibel*,
    No. 2:15-cv-00795-SPC-CM, 2017 WL 78638 (M.D. Fla. Jan. 9, 2017) ...................................................................41

*Gares v. Willingboro Twp.*,
    90 F.3d 720 (3d Cir. 1996) ..................................................45

*Gentry v. E. W. Partners Club Mgmt. Co. Inc.*,
    816 F.3d 228 (4th Cir. 2016) ...............................................24

*Gilead Cmty. Servs., Inc. v. Town of Cromwell*,
    432 F. Supp. 3d 46 (D. Conn. 2019).......................41, 47, 50

*Gonzalez v. Rakkas*,
    No. 93 CV 3229 (JS), 1995 WL 451034 (E.D.N.Y. July 25, 1995) .................40

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009)..................................................................*passim*

*In Re Guo*,
    965 F.3d 96 (2d Cir. 2020) ..................................................17

*Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*,
    958 F. Supp. 1320 (N.D. Ill. 1997) ........................................................41

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*,
    252 F.3d 608 (2d Cir. 2001) ................................................................10

*Innovative Health Sys., Inc. v. City of White Plains*,
    117 F.3d 37 (2d Cir. 1997) ..................................................................34

*Johnson v. Howard*,
    24 F. App'x 480 (6th Cir. 2001) ........................................................54

*Jones v. Alfred H. Mayer Co.*,
    392 U.S. 409 (1968) .............................................................................18

*Kennedy v. Supreme Forest Prod., Inc.*,
    761 F. App'x 72 (2d Cir. 2019) (Summary Order) .....................52, 53

*Kris v. Dusseault Fam. Revocable Tr.*,
    2022 WL 867990 (D.N.H. Mar. 23, 2022) .....................................21, 22

*In re Lamictal Direct Purchaser Antitrust Litigation*,
    957 F.3d 184 (3d Cir. 2010) ................................................................31

*LeBlanc-Sternberg v. Fletcher*,
    67 F.3d 412 (2d Cir. 1995) ..................................................................57

*Lee v. Edwards*,
    101 F.3d 805 (2d Cir. 1996) ................................................................54

*Lincoln v. Case*,
    340 F.3d 283 (5th Cir. 2003) .........................................................53, 54

*Ling Nan Zheng v. Liberty Apparel Co. Inc.*,
    389 F. App'x 63 (2d Cir. 2010) (Summary Order) ...........................34

*Madawala v. Struga Mgmt.*,
    No. SA-19-CV-00635-JKP, 2021 WL 2981196 (W.D. Tex. July
    15, 2021) .................................................................................................22

*Markham Concepts, Inc. v. Hasbro, Inc.*,
    1 F.4th 74 (1st Cir. 2021), *cert. denied,* 142 S. Ct. 1414 (2022) ........15

*Matera v. Google Inc.*,
No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ...................................................................................21

*Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*,
290 F.3d 98 (2d Cir. 2002) .................................................9

*Mendez-Matos v. Municipality of Guaynabo*,
557 F.3d 36 (1st Cir. 2009)..............................................55

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
No. 21-1076, 2022 WL 17332303 (2d Cir. Nov. 30, 2022) (Pérez, J., concurring) .............................................................17

*Meyer v. Holley*,
537 U.S. 280, 282 (2003)................................56, 57, 58

*MHANY Mgmt., Inc. v. Cnty. of Nassau*,
819 F.3d 581 (2d Cir. 2016) .................................*passim*

*Monell v. Dep't of Soc. Servs. of City of New York*,
436 U.S. 658 (1978).........................................................58

*Murray v. Mayo Clinic*,
934 F.3d 1101, 1105 (9th Cir. 2019) ..............................24

*Natofsky v. City of New York*,
921 F.3d 337 (2d Cir. 2019) .................................*passim*

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001) ...........................................32

*Ojeda v. Metro. Transp. Auth.*,
41 F.4th 56 (2d Cir. 2022) ................................................9

*Olson v. New York*,
315 F. App'x 361 (2d Cir. 2009) (Summary Order) .........38

*Pappas v. New Haven Police Dep't*,
278 F. Supp. 2d 296 (D. Conn. 2003)..............................56

*Parris v. Pappas*,
844 F. Supp. 2d 271 (D. Conn. 2012)...............................56

*Payne v. Jones*,
   711 F.3d 85 (2d Cir. 2013) ...........................................................50, 55

*People Helpers, Inc. v. City of Richmond*,
   789 F. Supp. 725 (E.D. Va. 1992) ....................................................58

*Perricone-Bernovich v. Tohill*,
   843 F. App'x 419 (2d Cir. 2021) (Summary Order) ...................................13, 23

*Ragin v. Harry Macklowe Real Est. Co.*,
   6 F.3d 898 (2d Cir. 1993) ..............................................................37

*Ragin v. N.Y. Times Co.*,
   923 F.2d 995 (2d Cir.1991) .............................................................40

*Rehab. Support Servs., Inc. v. City of Albany, N.Y.*,
   No. 1:14-cv-0499, 2015 WL 4067066 (N.D.N.Y. July 2, 2015).......................41

*Renz v. Grey Advert., Inc.*,
   135 F.3d 217 (2d Cir. 1997) ...........................................................29

*Robinson v. 12 Lofts Realty, Inc.*,
   610 F.2d 1032 (2d Cir. 1979) .........................................................19

*Rodriguez v. Vill. Green Realty, Inc.*,
   788 F.3d 31 (2d Cir. 2015) ............................................................37

*Smith v. Wade*,
   461 U.S. 30 (1983)........................................................................42

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003)......................................................................52

*Stern v. City of New York*,
   665 F. App'x 27 (2d Cir. 2016) (Summary Order) ............................................37

*Sykes v. New York City Hous. Auth.*,
   No. 1:22-CV-2127 (MKV), 2022 WL 2908015 (S.D.N.Y. July 22,
   2022) .......................................................................................23

*Sykes v. New York City Hous. Auth.*,
   No. 1:22-CV-2127 (MKV), 2022 WL 875902 (S.D.N.Y. Mar. 24,
   2022) .......................................................................................24

vii

*Taylor v. Nat'l Invs., Ltd.*,
  2022 WL 306367 (D.R.I. Feb. 2, 2022)............................................................22

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project,
  Inc.*,
  576 U.S. 519 (2015)................................................................20, 45, 46

*Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*,
  682 F.3d 292 (4th Cir. 2012) ............................................................26

*Trafficante v. Metro. Life Ins. Co.*,
  409 U.S. 205 (1972)............................................................................40

*Triolo v. Nassau Cnty.*,
  24 F.4th 98 (2d Cir. 2022) ..................................................................9

*Tronzo v. Biomet, Inc.*,
  236 F.3d 1342 (Fed. Cir. 2001) ........................................................53

*TXO Prod. Corp. v. All. Res. Corp.*,
  509 U.S. 443 (1993)............................................................................53

*United States v. Bajakajian*,
  524 U.S. 321 (1998)............................................................................51

*United States v. Big D Enter., Inc.*,
  184 F.3d 924 (8th Cir. 1999) ............................................................53

*United States v. City of Black Jack, Missouri*,
  508 F.2d 1179 (8th Cir. 1974) ..........................................................45

*United States v. Kerekes*,
  No. 09-CR-137-HB, 2012 WL 3526608 (S.D.N.Y. Aug. 15, 2012),
  *aff'd*, 531 F. App'x 182 (2d Cir. 2013)............................................27

*United States v. Saavedra*,
  661 F. App'x 37 (2d Cir. 2016) (Summary Order) ............................33

*United States v. Space Hunters, Inc.*,
  429 F.3d 416 (2d Cir. 2005) ........................................................40, 45

*United States v. Wilkerson*,
  361 F.3d 717 (2d Cir. 2004) ..............................................................13

*United States v. Wynn*,
  845 F. App'x 63 (2d Cir. 2021) (Summary Order), *as amended*
  (Apr. 1, 2021), *cert. denied*, 142 S. Ct. 865 (2022) ............................................. 15

*United States v. Yonkers Bd. of Educ.*,
  837 F.2d 1181 (2d Cir. 1987) ................................................................................. 57

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338 (2013) ........................................................................................... *passim*

*Valley Hous. LP v. City of Derby*,
  802 F. Supp. 2d 359 (D. Conn. 2011) .................................................................... 58

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) ............................................................................................... 34

*Villetti v. Guidepoint Glob. LLC*,
  No. 21-2059-CV, 2022 WL 2525662 (2d Cir. July 7, 2022)
  (Summary Order) ................................................................................................... 30

*Whiting v. Albek*,
  No. ED-CV-191542-DMG-SHKX, 2020 WL 7382777 (C.D. Cal.
  Oct. 30, 2020) ........................................................................................................ 22

*Wicomico Nursing Home v. Padilla*,
  910 F.3d 739 (4th Cir. 2018) ................................................................................. 24

*Williams v. First Advantage LNS Screening Sols. Inc.*,
  947 F.3d 735 (11th Cir. 2020) ............................................................................... 55

*Zann Kwan v. Andalex Grp. LLC*,
  737 F.3d 834 (2d Cir. 2013) .................................................................................. 30

**Statutes**

29 U.S.C. § 794 ..................................................................................................... 43, 45

42 U.S.C. § 1981 .................................................................................................. *passim*

42 U.S.C. § 1982 .......................................................................................................... 19

42 U.S.C. § 1983 .................................................................................................. *passim*

42 U.S.C. § 2000d ....................................................................................................... 44

ix

42 U.S.C. § 2000e-2................................................................16, 20, 21, 25

42 U.S.C. § 2000e-3.......................................................................14, 16

42 U.S.C. § 3604..........................................................................*passim*

42 U.S.C. § 12132.............................................................................43

Age Discrimination in Employment Act of 1967.................................*passim*

Americans with Disabilities Act, 42 U.S.C. § 12101 .........................*passim*

Civil Rights Act of 1991, Pub.L. 102-166, Title I, § 109(b)(2) .............24

Fair Housing Act, 42 U.S.C. § 3601 *et seq*.....................................*passim*

Fair Housing Amendments Act of 1988, 102 Stat. 1619.......................46

Title VII.................................................................................*passim*

**Other Authorities**

24 C.F.R. § 100.7 ..............................................................................57

H.R. Rep. No. 100-711 (1988)........................................................40, 46

## <u>STATEMENT OF THE ISSUES</u>

I.     Whether this Court should depart from existing precedent to overturn its
holding in *MHANY Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581 (2d Cir.
2016) and *Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) that Fair
Housing Act claims are governed by a motivating factor causation
standard?

II.    Even if this Court finds that Appellees' intentional discrimination and
retaliation claims under the Fair Housing Act and Americans with
Disabilities Act should be analyzed under a but-for causation standard,
whether the jury instruction at issue rises to the level of a harmful error?

III.   Whether the statutory availability of punitive damages against any
defendant under the Fair Housing Act should be read to exempt
municipalities?

IV.    Whether this Court should overturn a punitive damages award upheld by
the District Court?

V.     Whether a municipal defendant can be held vicariously liable under the
Fair Housing Act pursuant to traditional agency principles?

1

## STATEMENT OF THE CASE

In 2015, the Town of Cromwell ("Cromwell") engaged in a sustained campaign to stop Gilead Community Services ("Gilead") from operating a group home in town for six individuals with mental health disabilities. This months-long campaign included discriminatory comments at public hearings, meritless petitions to state regulators, official press releases pressuring Gilead to leave town, unjustified cease and desist zoning orders, indifference and neglect by the police department, denials of tax-exempt status, and public celebration and claims of victory upon the home's closure. Special Appendix ("SA") at 5-10, 27-31, 35-36.

After a six-day trial in 2021, a federal jury found that Cromwell violated the Fair Housing Act and the Americans with Disabilities Act and awarded both compensatory and punitive damages. Joint Appendix ("JA") at A195-97 (Dkt. 239). At trial it was undisputed that Cromwell's efforts to deny Gilead its rights under the Fair Housing Act were motivated by, and in response to, discriminatory outcry by Cromwell taxpayers opposed to having people with disabilities live next door. SA at 27-31. Indeed, in its ruling on post-trial motions, the district court found that "everything in this record suggests . . . that the Town of Cromwell, along with every Town official . . . as well as a significant number of its taxpayers, wanted to drive the planned Gilead group home out of town." *Id.* at 29. Facts introduced at trial and that are relevant to the instant appeal follow.

2

On March 26, 2015, Gilead purchased a home at 5 Reiman Drive in Cromwell, Connecticut, intending to open a group home for six men with mental health disabilities. SA at 5. As soon as Cromwell residents learned about Gilead's plans, they launched a vociferous opposition campaign. *Id.* at 5, 27-31.

A few days after the purchase of the home, Daniel Osborne, the Chief Executive Officer of Gilead, reached out to Town Manager Anthony Salvatore to inform him about Gilead's plans for the group home. *Id.* at 6. Mr. Osborne also met with several members of Cromwell leadership, including Mayor Enzo Faienza. *Id.* A public forum was recommended for Gilead to share information about the home. *Id.*

At the public forum, held on April 20, 2015, numerous Town officials spoke out against the group home, as did Cromwell residents, who interrupted by shouting questions and yelling at Gilead representatives that they were not wanted in town. *Id.* at 6-7, 27. The comments included Mayor Enzo Faienza analogizing group homes to package/liquor stores and taxpayers drawing comparisons between the group home residents and Sandy Hook Elementary School shooter Adam Lanza. *Id.*; JA at A347 (Trial Tr. at 630). Both Mayor Faienza and Manager Salvatore demanded more information from Gilead about the mental health diagnoses of the prospective residents, while also admitting that they would not

3

expect or require such information from other families moving into town. JA at A326-27, A356-57 (Trial Tr. at 544-45, 643-44).

Cromwell continued to oppose the group home, explicitly attributing its actions to the discriminatory concerns of the taxpayers. *See, e.g.*, SA at 5-7, 27-30; JA at A825-26 (Pls. Ex. 31) (Mayor emailing with constituent after forum that "Ideally I don't want anything in that neighborhood or in town at all."). The day after the forum, the Mayor issued an official press release on behalf of Cromwell:

> **[B]ased on the concerns by those in attendance**, Mayor Enzo Faienza is officially and public[ly] requesting, **on behalf of the citizens of the Town of Cromwell**, that Gilead consider relocating to a more suitable location.

SA at 7, 30 (emphasis added). The statement was also posted to the opposition coalition's Facebook group (self-named "Reiman Strong"), where members celebrated and praised Mayor Faienza and Manager Salvatore for their support. *Id.* at 7.

In early May 2015, Gilead learned that Cromwell had petitioned the Department of Public Health ("DPH") to deny Gilead a license for the home, despite the fact that Gilead did not require a license to operate the home. *Id.* at 7-8. Cromwell leadership admitted that the reason for filing the DPH petition was not because of anything Gilead had done, but because of the controversy around the home based on citizen fears about people with disabilities. *Id.* at 29; JA at A342-

4

43, A344-45, A358-59; A827-28 (Tral Tr. 598-99, 604-05, 653-54; Pls. Ex. 42).

Unsurprisingly, DPH denied the petition. SA at 8.

After the DPH petition failed, Gilead attempted to continue with its plans. Mr. Osborne reached out to Manager Salvatore to inform him that Gilead intended to move in its first resident in the first week of July. Cromwell responded with a cease and desist order, stating that the 5 Reiman Drive home "appears to be in violation of the Town of Cromwell Zoning Regulations" and threatening Gilead with a fine of $150 per day. *Id.* Cromwell eventually agreed to withdraw the cease and desist order on the condition that no more than two residents move in. *Id.* This was a condition that Manager Salvatore knew would not be financially viable for Gilead and would ultimately force the home to close. JA at A333 (Trial Tr. at 571); *see also* JA at A845-46 (Pls. Ex. 84).

Moving residents into the home did not dissipate the tension. In the middle of July, one of the residents left the home to visit the conservator of his estate. SA at 9. The resident did so without informing Gilead's on-site staff, who became worried for his safety and reached out to Cromwell police to assist in locating the resident. *Id.* Gilead later learned that Cromwell's police officers, in violation of protocol, had disclosed the resident's private health information to the media. *Id.* at 9, 36. Similar indifference to the residents at 5 Reiman occurred a few weeks later when the home was vandalized in the middle of the night. *Id.* A "for sale" stake

5

was pulled from a neighboring yard and thrown against the front door of 5 Reiman in the middle of the night, at 1:25 am. *Id.* at 9. Gilead called the police in the morning, but the department failed to fully investigate the incident, closing the file less than an hour from the initial call and interviewing only one neighbor. *Id.* at 9, 36. Then, on August 7, 2015, the Cromwell Town Assessor sent Gilead a letter denying 5 Reiman's application for tax-exempt status, something Gilead had never faced at any of its group homes. *Id.* at 8.

At the end of August, Gilead decided to close the home because it was not a safe place for the intended residents. *Id.* at 9; JA at A852-53 (Pls. Ex. 101). Cromwell celebrated the decision, publicly declaring victory in their fight against the home in press releases, emails, and election campaign websites. SA at 9-10; JA at A850, A851, A861, A862-64, A870 (Pls. Ex. 99, 100, 105, 109, 175). Taxpayers attended public town meetings to thank Town officials for their work opposing the home. JA at A313-14, A338-39 (Trial Tr. at 398-99, 586-87).

Nine months after the home had closed, Mr. Osborne had a conversation with Manager Salvatore, in which Mr. Salvatore told him that if Gilead continued to push the issues regarding 5 Reiman with Cromwell, Gilead was likely to endanger its tax-exempt status at its other property on Main Street. SA at 10; JA at A865-67 (Pls. Ex. 117). Gilead nevertheless filed the instant lawsuit in April 2017, and in January 2018, Cromwell, at its next opportunity to do so, denied Gilead a

6

renewal on its other property's tax exemption. JA at A294 (Trial Tr. at 287); SA at 10.

In October 2021, a jury heard the above evidence and unanimously found that Gilead and the Connecticut Fair Housing Center ("Plaintiffs" or "Appellees") had proved that Cromwell violated the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA"). The jury awarded compensatory damages of $181,000 and punitive damages of $5,000,000. JA at A196-97 (Dkt. 239 at 2-3).[1] Judgment was entered in Plaintiffs' favor on November 4, 2021. SA at 56. On May 27, 2022, the district court denied Cromwell's renewed motion for judgment under Federal Rule of Civil Procedure 50(b) and alternative motion for a new trial under Federal Rule of Civil Procedure 59. *Id.* at 3-55 ("Post-Trial Order"). In so doing, the district court upheld the jury's award of compensatory and punitive damages to Plaintiffs in its entirety. *Id*. at 24-39, 48-50.

Cromwell noticed its appeal on June 1, 2022. JA at A874-77 (Dkt. 282).

## **SUMMARY OF ARGUMENT**

The district court correctly denied Cromwell's post-trial motion. The district court's opinion was supported by a comprehensive review of the trial record, as

---

[1] Although the jury did not award compensatory damages to the Connecticut Fair Housing Center, the district court amended the judgment to include nominal damages, which Cromwell has not appealed.

7

well as Supreme Court and circuit precedent, and should be affirmed by this Court. Cromwell's arguments rely almost exclusively on cases interpreting statutes whose legislative history and purposes are distinct from the FHA and offer little guidance here.

The district court properly asked the jury to determine whether discrimination was a motivating factor in Cromwell's conduct in violation of the FHA. Under controlling Second Circuit precedent, motivating factor is the correct causation standard under the FHA, and contrary to Cromwell's assertions, subsequent Supreme Court case law concerning other statutes does not alter this standard. But even if but-for causation was the proper standard under the FHA, the instruction constitutes harmless error because the clear evidence at trial would also meet that standard and Cromwell cannot demonstrate prejudice.

Likewise, punitive damages are available under the FHA and there is no exemption for municipalities. Cromwell cites to Supreme Court case law that is about other statutes and should not be imputed to the FHA. Moreover, the district court properly affirmed the jury's reasonable award. There is no basis to overturn the district court's factual findings regarding the degree of reprehensibility of Cromwell's conduct, the ratio between the punitive damages award and significant harm and potential harm Gilead suffered, and the uncapped availability of punitive damages.

Finally, Supreme Court and circuit precedent makes clear that municipalities are vicariously liable for the discriminatory conduct of their agents under the FHA.

## ARGUMENT

### I.   Standard of Review

Under both Federal Rules of Civil Procedure 50 and 59, the Second Circuit must consider "'the evidence in the light most favorable'" to the nonmoving party, giving that party "'the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence.'" *Ojeda v. Metro. Transp. Auth.*, 41 F.4th 56, 63 (2d Cir. 2022) (quoting *Black v. Finantra Cap., Inc.*, 418 F.3d 203, 208-09 (2d Cir. 2005)) (Rule 50); *see also Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*, 290 F.3d 98, 106 (2d Cir. 2002) (internal citation omitted) (Rule 59).

This Court reviews a district court's denial of a Rule 50 motion for judgment as a matter of law *de novo*. *Ojeda*, 41 F.4th at 63. The Second Circuit will "affirm the denial of a Rule 50(b) motion unless there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Triolo v. Nassau Cnty.*, 24 F.4th 98, 105 (2d Cir. 2022) (internal citation omitted).

This Court reviews a district court's denial of a Rule 59 motion for a new trial for abuse of discretion, and such a motion "ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 623 (2d Cir. 2001) (internal citation omitted).

## II.    The District Court Properly Applied the Motivating Factor Causation Test to the Fair Housing Act, and Any Error Is Otherwise Harmless.

Controlling precedent establishes that the causation standard for discrimination claims under the FHA is motivating factor—in other words, that discrimination toward people with disabilities was a motivating factor behind Cromwell's conduct. *See MHANY Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581 (2d Cir. 2016). The district court carefully adhered to binding Second Circuit precedent applying a motivating factor causation standard to FHA claims and rejecting the but-for causation standard Cromwell sought to apply. The Supreme Court's decision in *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009 (2020), which concerns an entirely different statute, does nothing to change that.

Even if the proper standard was but-for causation, which it is not, vacatur is unwarranted as any error in the district court's jury instruction was harmless. Cromwell cannot meet its burden of demonstrating that the instructions as a whole

prejudiced them for three reasons. First, Cromwell ignores Supreme Court precedent stating that but-for causation does not require that an impermissible factor be "the sole or primary cause" for the defendant's actions. *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1744 (2020). Rather, but-for causation only requires that the impermissible factor have played a consequential role, even if "some other factor [] contributed to [defendant's] challenged [decisions]." *Id.* at 1739. Second, Cromwell's argument on error focuses on what caused Gilead's damages, not on the reasons for Cromwell's actions, even though the but-for causation inquiry should focus on why Cromwell acted as it did. The undisputed evidence adduced at trial—that the Town's conduct was driven by the discriminatory outcry from Cromwell's taxpayers—would have easily met the but-for standard, thereby resulting in the same outcome. Finally, the jury concluded that Cromwell violated Section 3604(c) of the FHA by issuing discriminatory statements based on disability, a cause of action that can be established without proving discriminatory intent. Thus, the jury verdict that Cromwell violated the FHA would remain regardless of this Court's decision as to causation.

### A. Motivating Factor is the Proper Standard for Evaluating Causation Under the Fair Housing Act.

Cromwell attempts to relitigate an issue that the Second Circuit squarely decided in *MHANY Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581 (2d Cir. 2016),

11

arguing that the causation standard for FHA claims is but-for, not motivating factor. Cromwell does not dispute that *MHANY* applies; rather, it argues that Supreme Court precedent requires this holding be reversed. Cromwell's argument fails because it does not consider legal precedent or the FHA's unique history and purpose. None of the three Supreme Court cases cited by Cromwell dictates otherwise; indeed, the Supreme Court has made clear that it is important to "restrict its analysis to the statute before it and withhold judgment on the proper resolution of a case" under another statute. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351 (2013).

### i. <u>Second Circuit Precedent Provides the Proper Standard.</u>

Under long-standing Second Circuit precedent—which Cromwell does not dispute—FHA claims are adjudicated under a motivating factor causation standard. In *MHANY*, the Second Circuit addressed the issue now before this Court: what standard of causation applies to FHA claims. The Second Circuit reaffirmed that, to prove discrimination under the FHA, plaintiffs must establish that "the adverse action was motivated, at least in part, by an impermissible reason." 819 F.3d at 613 (internal citation omitted). The Court found that it was bound by *Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994), a 1994 Second Circuit opinion applying this standard to FHA claims. 819 F.3d at 613 (citing *Cabrera*, 24 F.3d at 383).

12

In applying motivating factor, the *MHANY* court noted that at the time Congress amended the FHA in 1988, the circuit courts that had considered the issue were in agreement that a motivating factor standard applied to the FHA. 819 F.3d at 616 (listing circuit cases). By amending the FHA without altering the text, Congress implicitly adopted this construction of the statute. *Id.* Thus, as the Court concluded in *MHANY*, Cromwell's position that but-for causation applies instead "runs headlong into Circuit precedent." *Id.*

This Court remains bound by *MHANY* and *Cabrera*. Second Circuit panels are "bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of [the Second Circuit] or by the Supreme Court." *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004). There is no such intervening decision here, and the motivating factor causation standard continues to apply to these claims. *See, e.g.*, *Perricone-Bernovich v. Tohill*, 843 F. App'x 419, 421 (2d Cir. 2021) (Summary Order) ("To proceed on a disparate treatment theory, a plaintiff must allege enough facts to state a plausible claim that 'animus against the protected group was a significant factor in the position taken by the municipal decision-makers.'" (quoting *MHANY*, 819 F.3d at 606)).

13

ii. <u>No Supreme Court Decision Alters the Causation Standard for FHA Claims.</u>

Cromwell relies on three inapposite Supreme Court decisions concerning distinct statutes to argue that the district court should have disregarded circuit precedent and instead applied but-for causation to Appellees' FHA claims. *See* Appellant's Br. at 22-31(citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) (concerning the Age Discrimination in Employment Act of 1967); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) (concerning employment retaliation under Section 2000e-3(a) of Title VII); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009 (2020) (concerning 42 U.S.C. § 1981)). None of the cases Cromwell relies on, neither *Gross*, *Nassar*, nor *Comcast*, even addresses the FHA, much less stands for the proposition that but-for causation applies to all civil rights statutes (including the FHA). Because the text, history, and precedents of the FHA are distinct from those statutes, these cases do not alter the FHA causation standard.

a. <u>Neither *Gross* nor *Nassar* Applies.</u>

Cromwell first points to *Gross* and *Nassar* to argue that the but-for causation adopted therein applies to FHA claims. As a preliminary matter, both *Gross* and *Nassar* pre-date *MHANY*, and thus cannot support any departure from that later binding decision. *See United States v. Wynn*, 845 F. App'x 63, 66 (2d Cir. 2021)

14

(Summary Order), *as amended* (Apr. 1, 2021), *cert. denied*, 142 S. Ct. 865 (2022) (finding that a Supreme Court case did not undermine binding Second Circuit opinion, where later Second Circuit decisions "[did] not explicitly address whether [Supreme Court decision] unsettles [the circuit opinion]" but were issued after the Supreme Court decision and "made clear that [the circuit opinion] is still binding precedent in this Circuit"); *Markham Concepts, Inc. v. Hasbro, Inc.*, 1 F.4th 74, 82 (1st Cir. 2021), *cert. denied,* 142 S. Ct. 1414 (2022) (finding that the panel was "not free to abandon" binding circuit precedent based on a Supreme Court case predating the circuit opinion at issue).

Moreover, both cases are narrowly drawn to specific statutes. In *Gross*, the Supreme Court considered the appropriate causation standard for claims under the Age Discrimination in Employment Act of 1967 ("ADEA"). *See generally* 557 U.S. 167. Its analysis was restricted "to the statute before [the Court]." *Nassar*, 570 U.S. at 351 (discussing *Gross*). Indeed, as *Gross* itself cautioned, "[w]hen conducting statutory interpretation, we must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Gross*, 557 U.S. at 174 (internal citation omitted). Heeding that caution, the Second Circuit has noted that "by its terms, *Gross* applies only to the ADEA." *MHANY*, 819 F.3d at 616.

15

In *Nassar*, the Supreme Court considered the causation rules for Title VII's ban on status-based discrimination (under 42 U.S.C. § 2000e-2) and employer retaliation (under 42 U.S.C. § 2000e-3). While the Court considered the interpretation of the phrase "because of" in *Gross* to be persuasive, that alone was not dispositive. *Nassar* also explored "[t]he text, structure, and history" of the relevant sections of Title VII to determine that but-for causation applies to retaliation claims under § 2000e-3(a), while motivating factor causation applies to status-based discrimination under § 2000e-2. *Nassar*, 570 U.S. at 362.

As neither *Gross* nor *Nassar* speak to FHA claims, *MHANY*, decided after *Gross* and *Nassar*, properly reaffirmed that motivating factor rather than but-for causation applies to the FHA after these opinions were issued. *MHANY*, 819 F.3d at 616. In fact, as detailed in Section II.A.ii.b. *infra*, the Second Circuit and other courts continue to apply the motivating factor standard to FHA claims long after *Gross* and *Nassar*.

> b. <u>*Comcast* Does Not Overrule Circuit Precedent on FHA Causation.</u>

Cromwell argues that although the Second Circuit declined to extend *Gross* to the FHA "in the absence of clearer guidance from the Supreme Court," *MHANY*, 819 F.3d at 616, the Supreme Court's recent *Comcast* decision provides that guidance. Appellant's Br. at 23. Not so. Much like *Gross* and *Nassar*, *Comcast*

16

concerns a distinct statute: Section 1981 of the Civil Rights Act of 1866. To overturn *MHANY* in light of *Comcast* would require this Court to find that *Comcast* "broke[] the link" on which *MHANY* is premised. *In Re Guo*, 965 F.3d 96, 105 (2d Cir. 2020) (noting that, to qualify as an intervening decision that would render Second Circuit precedent non-binding, the Supreme Court's conclusion must "have broken the link" on which the prior decision was premised). It did not. In fact, no court of appeals has extended the causation standard in *Comcast* to the FHA context, and Cromwell presents no grounds for this Court to be the first.

Cromwell focuses on a line in *Comcast* noting that the "but for" causation test "supplies the 'default' or 'background' rule against which Congress is normally presumed to have legislated when creating its own new causes of action[,]" including "federal antidiscrimination laws like § 1981." *Comcast*, 140 S. Ct. at 1014 (citing *Gross* and *Nassar*). But, as Cromwell conveniently ignores, the Supreme Court specifically requires that, to determine whether the statute at issue follows the background rule, "[a]ll the traditional tools of statutory interpretation" must be employed. *Id.* at 1019; *see also Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, No. 21-1076, 2022 WL 17332303, at *8 n.5 (2d Cir. Nov. 30, 2022) (Pérez, J., concurring) (noting that in *Comcast*, the Supreme Court "relied on the traditional tools of statutory interpretation to reach its holding," and listing relevant sections of *Comcast* referring to that analysis). The Court ultimately held that

"**taken collectively**, clues from the statute's text, its history, and [the Court's] precedent" supported the application of but-for causation to Section 1981, but such an outcome is not a foregone conclusion. *Comcast*, 140 S. Ct. at 1014 (emphasis added).

Cromwell attempts to apply that conclusion to the FHA without engaging in any such analysis, much less the "careful and critical examination" required. *Gross*, 557 U.S. at 174 (internal citation omitted). In fact, performing this exercise makes clear that in the FHA and Section 1981, "we have two statutes with two distinct histories, and not a shred of evidence that Congress meant to incorporate the same causation standard." *Comcast*, 140 S. Ct. at 1017. The FHA's legislative purpose and context confirm this.

First, the FHA was adopted in 1968 with a "broad and inclusive compass" that entitles it to a "generous construction." *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995) (internal citation omitted); *see also Cabrera*, 24 F.3d at 388 ("The provisions of 42 U.S.C. § 3604 are to be given broad and liberal construction") (internal citation omitted). By contrast, Section 1981 of the Civil Rights Act of 1866 was adopted long before the FHA, with a far more limited purpose. *See Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968). In *Jones*, the

18

Supreme Court highlighted the significant differences between Section 1982[2] and the FHA, noting that the former is "not a comprehensive open housing law" and "[i]n sharp contrast to the Fair Housing [Act]," its coverage is more limited. *Id.*

Second, the context in which the FHA was amended illuminates Congress' intent to maintain the motivating factor test. The FHA was last amended in 1988. The *MHANY* court emphasized that, at that point, circuit courts were in agreement that a motivating factor test applied to the FHA. *MHANY*, 819 F.3d at 616 (citing cases from five courts of appeals); *see also Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1042 (2d Cir. 1979) (collecting cases finding that challenged conduct would violate the FHA if a protected characteristic "is even one of the motivating factors"). In fact, all courts of appeals that considered this question prior to the 1988 amendment (including the Second, Fifth, Sixth, Seventh, and Eight Circuits) applied a motivating factor or similar standard, rather than a but-for standard. *MHANY*, 819 F.3d at 616. By amending the FHA without altering that broadly held standard, Congress "implicitly adopt[ed] the [Courts'] construction of the statute." *Id.* (citing *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project,*

---

[2] The Supreme Court "has construed §§ 1981 and 1982 alike because it has recognized the sister statutes' common language, origin, and purposes." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 448 (2008).

*Inc.*, 576 U.S. 519, 536 (2015)). That is, as the Supreme Court has found in other contexts, "Congress' decision in 1988 to amend the FHA while still adhering to the operative language in §§ [3604 and 3617] is convincing support for the conclusion that Congress accepted and ratified the unanimous holdings of the Courts of Appeals[.]" *Inclusive Communities Project*, 576 U.S. at 536 (relying on the same interpretative technique to conclude that Congress ratified courts of appeals' finding that FHA allowed for disparate-impact liability).

Cromwell argues that because Congress amended Title VII's provisions to incorporate a mixed-motive standard of causation but did not similarly amend the FHA or ADA, the Court should not read the FHA to apply a mixed-motive standard. Appellant's Br. at 30. That is incorrect. In contrasting Congress' amendment of Section 2000e-2 of Title VII to add motivating factor causation with its silence on the causation standard for Section 1981, *Comcast* considered that Congress amended these statutes "**[a]t the same time**" in 1991. *Comcast*, 140 S. Ct. at 1017 (emphasis added). It thus held that "where, as here, Congress has **simultaneously** chosen to amend one statute in one way and a second statute in another way, we normally assume the differences in language imply differences in meaning." *Id.* at 1018 (emphasis added). But unlike Section 1981 (or the ADEA at issue in *Gross*, or the Title VII retaliation section at issue in *Nassar*), the FHA was **not** amended simultaneously as Title VII. Because these statutes were not

20

contemporaneously amended, the Court should not infer that any "differences in language" between the FHA and Section 2000e-2 of Title VII "imply differences in meaning." *Comcast*, 140 S. Ct. at 1018; *see also Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (refusing to apply the presumption under *Gross* that the legislature acted intentionally in amending one statute but not another, finding that, unlike in *Gross*, where the Court considered that Congress amended the ADEA and Title VII at the same time, the statutes at issue were not contemporaneously amended, and thus there was "minimal value in the [l]egislature's inaction").

Cromwell fails to present any circuit authorities (or even authorities within the Second Circuit) supporting its misguided interpretation of *Comcast*. Instead, it cites *Kris v. Dusseault Fam. Revocable Tr.*, 2022 WL 867990 (D.N.H. Mar. 23, 2022). Appellant's Br. at 31. But that district court did not consider the history or precedents of the FHA, relying instead on the fact that the First Circuit had not opined on what level of causation was appropriate to FHA claims. 2022 WL 867990, at *5. In the absence of controlling cases dictating otherwise, the court

decided to apply but-for causation.[3] *Id.* By contrast, as established above, controlling Second Circuit precedent dictates otherwise, as does a review of the history, purpose, and precedent of the FHA. Moreover, other district courts have declined to extend *Comcast* to the FHA, making clear that circuit-level causation standards for FHA claims remain undisturbed. *See, e.g.*, *Madawala v. Struga Mgmt.*, No. SA-19-CV-00635-JKP, 2021 WL 2981196, at *3 (W.D. Tex. July 15, 2021) (applying *Comcast*'s but-for standard to Section 1981, but applying circuit-specific motivating factor standard to the FHA); *Whiting v. Albek*, No. ED-CV-191542-DMG-SHKX, 2020 WL 7382777, at *5 n.5 (C.D. Cal. Oct. 30, 2020) (noting that "[w]hile recent Supreme Court decisions have replaced mixed motive causation for discrimination claims arising under the [ADEA] . . . and [Section 1981] with a but-for causation standard, the Ninth Circuit's use of the mixed motive standard in FHA Section 3604 discrimination claims remains undisturbed").

---

[3] Appellant points to two additional district court cases applying but-for causation to FHA claims: *Taylor v. Nat'l Invs., Ltd.*, 2022 WL 306367 (D.R.I. Feb. 2, 2022) and *Campos v. HMK Mortg., LLC*, 458 F. Supp. 3d 517, 531-32 (N.D. Tex. 2020). Neither of these cases concern *Comcast*, but instead rely on *Gross* and *Nassar* which, as explained above, are narrowly limited to different statutes and predate controlling Second Circuit precedent. Moreover, much like *Kris*, *Taylor* is within the purview of the First Circuit, which has not addressed the applicable causation standard for FHA claims.

Accordingly, even after *Comcast*, *Gross*, and *Nassar*, the Second Circuit, as well as other circuit courts and district courts in the Second Circuit, have properly continued to evaluate FHA claims under a motivating factor causation standard. *See Tohill*, 843 F. App'x at 421 ("To proceed on a disparate treatment theory, a plaintiff must allege enough facts to state a plausible claim that 'animus against the protected group was a significant factor in the position taken by the municipal decision-makers.'") (citing *MHANY*, 819 F.3d at 606)); *431 E. Palisade Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) (finding that discriminatory purpose must be motivating factor for FHA claims); *Sykes v. New York City Hous. Auth.*, No. 1:22-CV-2127 (MKV), 2022 WL 2908015, at *3-4 (S.D.N.Y. July 22, 2022); *Connecticut Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, 478 F. Supp. 3d 259, 303 (D. Conn. 2020).

*MHANY* and *Cabrera*'s application of the motivating factor standard to FHA claims continues to bind this Court. Cromwell's argument "runs headlong into Circuit precedent" and must be rejected. *MHANY*, 819 F.3d at 616.

      iii.  *Even If But-For Causation Applies to Title II of the ADA, the Jury's Verdict Should be Upheld Under the FHA.*

Cromwell tries to make much of this Court's decision in *Natofsky v. City of New York*, 921 F.3d 337 (2d Cir. 2019), arguing that because the Court applied a but-for causation standard to employment discrimination claims under Title I of the

23

ADA there, it must do so here as to Appellees' Title II ADA **and** FHA claims.[4]

Appellant's Br. at 23, 25-26. But Cromwell's argument fails for two reasons: (1)

*Natofsky* is irrelevant to FHA claims, contrary to Cromwell's bald assertions, and

(2) any relevance *Natofsky* has to Appellees' ADA claims does not change the

case's outcome, because the jury verdict with respect to FHA claims remains intact

regardless.

First, *Natofsky* says nothing about the FHA's causation standard. The Court

cannot "apply rules applicable under one statute to a different statute without

careful and critical examination." *Gross*, 557 U.S. at 174 (internal citation

omitted). And such an examination makes clear the causation standard in *Natofsky*

does not reach the FHA context or affect this case.

---

[4] The Second Circuit has not decided whether but-for causation applies to Title II of the ADA after *Comcast*. *Sykes v. New York City Hous. Auth.*, No. 1:22-CV-2127 (MKV), 2022 WL 875902, at *4 n.3 (S.D.N.Y. Mar. 24, 2022). It would not be alone if it were to apply but-for causation to Title I and motivating factor to Title II. *Compare Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018) (applying motivating factor to Title II), *and A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1203 n.5 (9th Cir. 2016) (same), *with Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 235 (4th Cir. 2016) (applying but-for causation to Title I), *and Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) (same). Unlike Title I, Title II was not contemporaneously amended with Title VII. *See* Civil Rights Act of 1991, Pub.L. 102-166, Title I, § 109(b)(2) (amending Title I but not Title II).

In *Natofsky*, the Second Circuit only considered the applicable standard for employment discrimination claims under Title I of the ADA. *Natofsky*, 921 F.3d at 346. Even assuming that *Natofsky* extends to Appellees' non-employment discrimination claims under Title II of the ADA, its analysis is narrow. In finding that but-for causation was appropriate, *Natofsky* largely relied on a comparison of the relevant ADA sections with Title VII's provisions establishing a motivating factor—it noted that the ADA, unlike Section 2000e-2(m) of Title VII, did not include an express instruction that the motivating factor standard applied. *Natofsky*, 921 F.3d at 348. This comparison was relevant to the Court because the ADA and Title VII were amended at the same time. *Id.* at 347-48. The Court relied on the fact that "when Congress added § 2000e-2(m) to Title VII, it '**contemporaneously amended**' the ADA but did not amend it to include a 'motivating factor' test." *Id.* (emphasis added) (internal citation omitted). As described at length above, that is not the case with the FHA. *See supra* at 12-13. Unlike Section 1981, the ADEA, or even Title I of the ADA, the FHA was **not** contemporaneously amended, such that the differences in language between the FHA and Section 2000e-2 do not "imply differences in meaning." *Comcast*, 140 S. Ct. at 1018. And the FHA's history, purpose, and precedent command a different outcome. Much like the authorities described above, the causation standard adopted in *Natofsky* is cabined to the statute at issue there: the ADA.

Second, *Natofsky* does not change the outcome of this case. Given that Appellees' FHA and ADA claims were based on entirely overlapping conduct, even if that ADA claim had been removed, the jury would have received the exact same set of instructions and heard identical evidence for the FHA claim alone.

Where a jury finds liability on two distinct claims arising from the same conduct and the jury's finding with respect to one of the claims is vacated due to error, the verdict and damages award on the remaining claim can stand because the finding on the vacated claim amounts to harmless error. Where one claim remains, the Court can be "sufficiently confident that the verdict was not influenced by an error in the jury charge[,]" and thus the finding on the vacated claim amounts to harmless error. *Chowdhury v. Worldtel Bangladesh Holding, Ltd.*, 746 F.3d 42, 50 (2d Cir. 2014) (internal citation omitted) (rejecting defendants' argument that the case should be remanded where only one of two claims was vacated, instead holding that the claims "both stemmed from the same alleged acts" and that there was adequate evidence for the jury to find liability under the remaining claim); *see also Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 314 (4th Cir. 2012) (holding that new trial was not necessary because remaining claims in case were "predicated on the same conduct" as that of the dismissed claims, and the possible recovery for each claim was the same, making it

"reasonably certain that the jury was not significantly influenced by issues erroneously submitted to it") (internal citation omitted).

Here, removing the ADA claim would not have affected Appellees' FHA claims. As detailed *supra* at 12-13, under existing Second Circuit precedent *MHANY* and *Cabrera*, the jury would still have been charged with determining whether disability discrimination was a motivating factor in the Town's conduct. Therefore, even if the ADA claim were vacated, because the FHA and ADA claims "stemmed from the same alleged acts" of the Town, the jury verdict with respect to the FHA claims would have remained valid. *Chowdhury*, 746 F.3d at 50.[5]

Nor would the jury's damages award have been affected. Given that "a double recovery by a victim is prohibited," the jury's damages award for the FHA claim, standing alone, would not have differed from its damages award for the FHA and ADA claims together. *United States v. Kerekes*, No. 09-CR-137-HB, 2012 WL 3526608, at *2 (S.D.N.Y. Aug. 15, 2012), *aff'd*, 531 F. App'x 182 (2d Cir. 2013). The jury was instructed to award damages based solely on the damages proximately caused by Cromwell's conduct, and in fact, this instruction did not even refer to the multiple statutes at issue. JA at A186-87 (Dkt. 233 at 29-30).

---

[5] For the same reasons discussed below, *see infra* Section III.B.iii, an error in the ADA instruction would be harmless as the undisputed evidence at trial was sufficient to meet the but-for standard.

Thus, even if the Court were to apply *Natofsky* to Appellees' Title II ADA claims, there is no basis for finding that it would have impacted the damages awarded by the jury.

### B. Should the Court Determine the Proper Standard for the Fair Housing Act Is But-For Causation, Any Error in the Jury Instruction Would Be Harmless.

Even if the Court were to find that but-for causation applies to FHA claims, Cromwell fails to show that error would affect the jury verdict. In support of its assertion that a but-for instruction would have resulted in a different outcome, Cromwell relies on two arguments, neither of which is persuasive. First, Cromwell errs in equating but-for causation with sole-factor causation, arguing that evidence presented at trial ostensibly supports other non-discriminatory reasons for the Town's actions. But as the Supreme Court has squarely held, but-for causation does not require that disability be "the sole or primary cause" for the Town's actions; it only requires that the impermissible factor have played a consequential role. *Bostock*, 140 S. Ct. at 1744. Despite Cromwell's misguided attempts, "a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged [decisions]." *Id.* at 1739.

Second, Cromwell argues that there was insufficient evidence for a jury to find that, but for Cromwell's conduct, Gilead would not have closed the home at 5 Reiman Drive. Appellant's Br. at 32-36. Yet this confuses injury (here, Cromwell's

28

violation of federal civil rights laws) with damages (the harm Gilead suffered as a result). But-for causation is relevant only to the first question: whether Cromwell's conduct violated civil rights law. How Gilead was harmed by Cromwell's violation is not relevant for purposes of the injury inquiry, and the district court properly instructed the jury on proximate causation for damages.

Finally, Cromwell bears the burden of pointing to facts that demonstrate that the jury instructions had an impact on the jury's verdict. *See Renz v. Grey Advert., Inc.*, 135 F.3d 217, 223 (2d Cir. 1997). It fails to do so here. The evidence adduced at trial was sufficient to meet the but-for causation standard, such that a but-for causation instruction would have resulted in the same verdict.

      i.  <u>*But-For Causation Does Not Mean Sole-Factor Causation.*</u>

First, the Court should reject Cromwell's arguments insofar as they assume that the presence of other potential causes of discriminatory conduct would in and of itself make but-for causation impossible. In *Bostock*, the Supreme Court clarified the definition of but-for causation: it does not require a showing that a protected characteristic was "the sole or primary cause" of the defendant's actions. 140 S. Ct. at 1744. Rather, under the but-for standard, a plaintiff need only establish that the defendant's actions were "based in part" on the occupants' disability, even "if other factors besides [that protected characteristic] contributed to the decision." *Id.* at 1741; *see also Villetti v. Guidepoint Glob. LLC*, No. 21-

29

2059-CV, 2022 WL 2525662, at *5-7 (2d Cir. July 7, 2022) (Summary Order) (finding that the district court erred in requiring that retaliation be the only cause for the employer's action, and noting that but-for causation requires only that the adverse action would not have occurred in the absence of the retaliatory motive); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 n.5 (2d Cir. 2013) (explaining that but-for causation does not impose "a burden to show that such consideration was the 'sole' cause").

It is Cromwell's burden to point to factual evidence establishing that a but-for instruction would have impacted the jury's finding, but Cromwell points only to evidence that supposedly demonstrates legitimate non-discriminatory reasons for (some of) the Town's actions. *See* Appellant's Br. at 36-37 (arguing, *inter alia*, that the DPH petition was filed because of advice from the Town attorney; that Mayor Faienza's actions were motivated by his concerns regarding inconsistencies expressed by Gilead; or that Gilead's tax-exempt status was denied because of the duration of stay issue). Crucially, Cromwell fails to demonstrate how that evidence would have yielded a different verdict from the jury. Although the Supreme Court has made clear that "a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged [actions][,]" *Bostock*, 140 S. Ct. at 1739 (emphasis in original), that is precisely what Cromwell attempts to do. *See also id.* at 1742 (noting that the causation standard can be met even where "two causal

30

factors may be in play"). Cromwell's evidence that there may have been other contributing causes for its actions does not preclude a finding that the Town's actions would not have occurred absent the disability status of Gilead's residents.

> ii. _But-For Causation Is Concerned with the Reasons Behind a Defendant's Actions, Not a Plaintiff's Damages._

Second, Cromwell focuses almost entirely on its argument that "[i]n order to prevail on its claim pursuant to the applicable 'but-for' causation standard, Gilead was required to prove that the claimed injury, namely that it was forced to close its residence at 5 Reiman Drive, would not have occurred 'but-for' the Defendant's conduct." Appellant's Br. at 32. But this argument is fatally flawed.

Courts are clear that but-for causation is concerned with the motivations behind the defendant's decision, not the damages that resulted. In _Comcast_, the Supreme Court addressed the question of whether a plaintiff bringing a Section 1981 claim must prove that race was a determinative factor in the **defendant's decision** not to transact with the plaintiff. 140 S. Ct. at 1019. _Comcast_'s use of the term "injury" referred to the plaintiff's "loss of a legally protected right" not to be discriminated against, and not what quantitative harm it suffered as a result. _Id._; _see also In re Lamictal Direct Purchaser Antitrust Litigation_, 957 F.3d 184, 194-95 (3d Cir. 2010) (noting that courts "consistently distinguish[] injury from damages" and outlining a separate analysis for each.").

31

Here, even if but-for causation applies to the FHA, which it does not, the proper place to apply it would be in deciding whether Defendant would have made the decisions they did but for disability. This is exactly what the district court instructed the jury to do: it explained that for Plaintiffs to establish that Cromwell engaged in intentional discrimination and retaliation, they were required to prove that "disability was one motivating factor for the conduct." JA at A178, A183-84 (Dkt. 233 at 21, 26-27).

Nevertheless, Cromwell centers its argument on the fact that Gilead would have closed the home at 5 Reiman Drive regardless of Cromwell's actions. Appellant's Br. at 32-36. But that is a question of **damages**, not **injury**. "Proof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury)." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 188 (3d Cir. 2001), as amended (Oct. 16, 2001). Notably, Cromwell did not object to the district court's instruction on damages, but only to the standard for proving discrimination. JA at A507-09, A534 (Trial Tr. – Charge Conference at 4-6, 31). Why Gilead ultimately shuttered the home is relevant only to whether its closure should be

considered as part of the damages that resulted from Cromwell's discrimination.[6] Despite Cromwell's persistence in re-litigating whether Gilead closed the home because of Cromwell, this has no bearing on the but-for causation issue in front of this Court.

Put simply, evidence regarding the reasons for Gilead's closure of the home sheds no light on the question of whether the motivating factor instruction influenced the jury's verdict. Accordingly, Cromwell cannot meet its burden of showing prejudice.

### iii.   *The Record at Trial Meets the But-For Causation Standard.*

Contrary to Cromwell's contentions, there is substantial evidence confirming that disability was a causal factor in Cromwell's actions. Because the evidence supports that disability was "one but-for cause of [Cromwell's] decision[s]" even if not "the sole or primary cause[,]" *Bostock*, 140 S. Ct. at 1739, 1744, it is clear that a jury would have returned a liability verdict even with a but-for causation instruction. Cromwell thus "cannot show the requisite level of prejudice" required to obtain a new trial. *United States v. Saavedra*, 661 F. App'x 37, 43 (2d Cir. 2016)

---

[6] This same confusion applies to Cromwell's argument regarding the Connecticut Fair Housing Center's damages. *See* Appellant's Br. at 38. Whether CFHC proved it was entitled to compensatory damages for its injury is entirely distinct from the question of whether CFHC proved that the Town of Cromwell disregarded its civil rights obligations.

(Summary Order); *see also Ling Nan Zheng v. Liberty Apparel Co. Inc.*, 389 F. App'x 63, 65 (2d Cir. 2010) (Summary Order) (finding vacatur unwarranted where record allows court to conclude that verdict was not substantially influenced by alleged error and noting that "absolute certainty" is not required).

At trial, Appellees demonstrated the requisite discriminatory intent in two ways: (1) that Cromwell municipal decisionmakers acted with discriminatory motive, *see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977); and (2) that private citizens acted with discriminatory motive, and that Cromwell acted in order to appease those citizens, *see Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 49 (2d Cir. 1997). Cromwell does nothing to rebut this.

In fact, Cromwell has effectively conceded the latter: it is essentially undisputed that Town actors were motivated to take action against Gilead in order to quell the disruption stemming from the discriminatory concerns of Town residents. Cromwell's own brief cites to the testimony that the Town acted because of the anger and disruption created by Town residents. Appellant's Br. at 36-37. This was an argument that counsel for the Town emphasized repeatedly in his closing. JA at A609, A612-13, A615-17, A628 (Trial Tr. – Jury Charge and Closing Argument at 106, 109-110, 112-114, 125); *see also* SA at 5-7, 27-30 (district court's recital of taxpayers outcry and Town's reaction); JA at A824 (Pls.

34

Ex. 30) (official press release by Town of Cromwell urging Gilead to relocate was "based on" concerns expressed by the citizens at the public forum); SA at 6, 27 (description of the "concerns" expressed at the public forum included many members of Town leadership voicing their opposition to the group home and Town residents shouting and yelling that Gilead was not wanted in Town); SA at 29, JA at A342-43, A344-45, A358-59 (Trial Tr. at 598-99, 604-05, 653-54) (Mayor and Town Manager admitting at trial that the reason they filed the DPH petition to deny Gilead a license was because of citizen outcry regarding fears about group homes and people with mental health disabilities that were unrelated to Gilead). These admissions alone are sufficient to establish but-for causation. *See* JA at A180 (Dkt. 233 at 23) (instructing the jury that "Gilead Community Services and the Connecticut Fair Housing Center can establish that the Town of Cromwell acted 'because of disability' by showing that Town of Cromwell officials bowed to political pressure by private citizens who opposed the home at 5 Reiman Drive on account of prejudice.").

This is not the only evidence that disability was a but-for cause of Cromwell's decision-making. Cromwell's own testimony and documents establish the former, too: that disability was "one but-for cause" of the municipal decisionmakers' actions against Gilead. *Bostock*, 140 S. Ct. at 1739.

35

First, the statements and testimony by Mayor Faienza and Manager Salvatore made unambiguously clear that their actions were taken because of the disability of the intended residents. *See* SA at 6-7, 27; JA at A346-47 (Trial Tr. at 629-30) (Mayor admitting that, at public forum, he compared group homes to package/liquor stores, advocating they should be regulated in the same way); JA at A350-57 (Trial Tr. at 637-44) (Mayor admitting that he expressed to the media his disappointment that Gilead would not share the types of disabilities the residents of 5 Reiman might have); *Id.* at A326-27, A350-57 (Trial Tr. at 544-45, 637-44) (Mayor and Manager admitting that they wanted Gilead to provide more information about the mental health disabilities of its residents than they would require of other families moving to town).

Second, the Town's own documents laid bare the Town's discriminatory motives. *See* SA at 7-8; JA at A824 (Pls. Ex. 30) (official press release by Town of Cromwell urging Gilead to relocate); JA at A829 (Pls. Ex. 51) (official press release announcing DPH petition to deny Gilead a residence because another community residence should not be permitted in town); *Id.* at A825-26 (Pls. Ex. 31) (Mayor's email telling constituent that he did not want Gilead's group home to be anywhere in town at all); SA at 9-10; JA at A850 (Pls. Ex. 99) (official press release celebrating the closure of the home).

Based on the voluminous evidence at trial, there is no reason to conclude the jury would have rendered a different verdict. No new trial is warranted, as even if the district court had given a but-for causation instruction, "in light of the evidence and arguments presented at trial, . . . the jury's verdict would have been the same." *Stern v. City of New York*, 665 F. App'x 27, 30 (2d Cir. 2016) (Summary Order). Accordingly, even if the district court erred in its motivating factor instruction, which it did not, Cromwell has failed to demonstrate that this error resulted in prejudice.

## C. Appellees' Section 3604(c) Claims Do Not Implicate Motivating Factor Causation.

Finally, even if the Court were to find that but-for causation applies to FHA claims, there is no error as to Appellees' 42 U.S.C. § 3604(c) claims. Cromwell attempts to conflate 3604(c) claims with other FHA claims, arguing that they all require but-for causation to prove discriminatory intent. Appellant's Br. at 28-29. But the Second Circuit has repeatedly "rejected the argument that a showing of discriminatory intent . . . is required" to prove a 3604(c) violation. *Ragin v. Harry Macklowe Real Est. Co.*, 6 F.3d 898, 906 (2d Cir. 1993). Even in the absence of evidence of discriminatory intent, a court can conclude that an ordinary reader would find that the challenged statements expressed an impermissible preference. *Id.* at 906; *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 53 (2d Cir. 2015)

37

("[T]he speaker's subjective belief is not determinative. What matters is whether the challenged statements *convey* a prohibited preference or discrimination to the ordinary listener.") (emphasis in original).

Here, the jury found that Cromwell violated 42 U.S.C. § 3604(c) in addition to other sections of the FHA.[7] JA at A195-97 (Dkt. 239). Because the elements of proof for a § 3604(c) claim do not include discriminatory intent, it survives regardless of this Court's determination on a standard of causation.

## III. **The District Court Properly Instructed the Jury on the Availability of Punitive Damages.**

Cromwell next argues that the district court erred in charging the jury that it could award punitive damages against the Town, contending that municipalities are immune from punitive damages. Appellant's Br. at 39. That argument also fails. The district court properly allowed the jury to consider punitive damages. The

---

[7] The jury's finding on Appellees' 3604(c) claim, which instructed the jury to find a violation if "the Town of Cromwell made statements indicating a preference, limitation, or discrimination based on disability," supports a conclusion that based on evidence at trial a but-for instruction would have yielded the same verdict. JA at A181-82 (Dkt. 233 at 24-25). Although this claim did not require a finding of intentional discrimination, the fact that the jury found the Town's statements to indicate that people with disabilities were not preferred by the Town is strong evidence that the Town would not have taken the actions it did but for disability. *See Olson v. New York*, 315 F. App'x 361, 363-64 (2d Cir. 2009) (Summary Order) (relying on fact that jury rejected all other claims of discrimination on verdict sheet in finding that any error in instruction on one claim was harmless).

FHA provides for punitive damages without limitation as to the type of defendant, and there is no textual basis for singling municipalities out for an exception. Cromwell's argument that it is nevertheless immune from punitive damages again relies on Supreme Court case law involving statutes that are significantly different from the FHA in text, legislative history, and policy. Cromwell also asserts that the factual record cannot support a finding of punitive damages because there was insufficient evidence of taxpayer misconduct. Cromwell misstates the requirement of taxpayer misconduct as it pertains to the FHA, and, in any event, the district court correctly found that there was ample record evidence that taxpayers participated in (and even caused) Cromwell's decision to take discriminatory action against Gilead.

### A. The FHA Does Not Exempt Municipalities from Punitive Damages.

The district court properly held that municipalities are not exempt from punitive damages under the FHA. To understand why, a court must look no further than the text of the FHA itself: "[I]f the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages." 42 U.S.C. § 3613(c)(1). This damages provision includes no limitation on the type of defendant to which it applies, and it does not single out municipalities as exempt. *Id.* By contrast, Title VII's damages provision expressly calls out governments as immune from punitive damages. *See* 42 U.S.C.

§ 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (**other than a government, government agency or political subdivision**)[.]") (emphasis added).

This Court has found that the FHA "applies on its face to anyone" because it "does not provide any specific exemptions" as to the type of defendant covered. *United States v. Space Hunters, Inc.*, 429 F.3d 416, 424 (2d Cir. 2005) (quoting *United States v. Hunter,* 459 F.2d 205, 210 (4th Cir. 1972) (discussing 42 U.S.C. § 3604(c)). Courts in the Second Circuit routinely affirm the availability of punitive damages under the FHA against a variety of defendants, and have never exempted any defendant from Section 3613(c). *See id.* at 427 (holding that district court should have submitted to jury punitive damages claim against defendant housing information vendor); *Cabrera*, 24 F.3d at 379 (concerning defendant real estate brokers); *Gonzalez v. Rakkas*, No. 93 CV 3229 (JS), 1995 WL 451034, at *7 (E.D.N.Y. July 25, 1995) (recommending assessing punitive damages against defendant principal for agent's acts).

Section 3613(c) must also be read within the context of the FHA's broad and inclusive purpose. *See Ragin v. N.Y. Times Co.*, 923 F.2d 995, 999 (2d Cir.1991) ("Congress used broad language in [the FHA], and there is no cogent reason to narrow" its meaning); *see generally Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209, 212 (1972). Further confirming that the FHA's damages provision

40

should be interpreted broadly, Congress has expressly stated its intent that courts be "able to award **all remedies** provided under this section." H.R. Rep. No. 100-711, at 40 (1988) ("House Report") (emphasis added).

In sum, nothing in the FHA suggests, explicitly or implicitly, that municipalities are exempt from the possibility of punitive damages. Nor has any court of appeals endorsed this view.

Cromwell contends that two Supreme Court cases regarding other civil rights statutes should "counsel against" municipal liability for punitive damages under the FHA. *See* Appellant's Br. at 39-41 (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) and *Barnes v. Gorman*, 536 U.S. 181 (2002)). As no court of appeals has held that the FHA exempts municipalities from punitive damages, Cromwell cites only to a haphazard list of district court cases to support its position.[8] *Fact Concerts* and *Barnes* are not persuasive in the FHA context

---

[8] As the district court's summary judgment decision noted, other district courts **have** found punitive damages cognizable against municipalities. *See Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 432 F. Supp. 3d 46, 86 (D. Conn. 2019); *see also, e.g.*, *Rehab. Support Servs., Inc. v. City of Albany, N.Y.*, No. 1:14-cv-0499 (LEK/RFT), 2015 WL 4067066, at *11 (N.D.N.Y. July 2, 2015) (*Fact Concerts* does not apply because "punitive damages are specifically authorized under the FHA"); *Floyd v. City of Sanibel*, No. 2:15-cv-00795-SPC-CM, 2017 WL 78638, at *7 (M.D. Fla. Jan. 9, 2017) (permitting punitive damages claim against multiple defendants, including a municipality); *Dadian v. Vill. Of Wilmette*, No. 98 C 3731, 1999 WL 299887, at *3 (N.D. Ill. May 4, 1999) (denying motion to strike plaintiffs' claims for punitive damages because "defendants fail to consider the FHAA, which was passed in *1988*, and which clearly states that 'a court may

because they were grounded in, and specific to, other statutes' text, history, and policy. In fact, applying those cases' principles to the FHA makes it even clearer that the FHA does **not** exempt municipalities from punitive damages.

Cromwell relies primarily on *Fact Concerts*, which considered whether punitive damages were available against municipalities under 42 U.S.C. § 1983. 453 U.S. 247. Section 1983 provides a private right of action for unconstitutional acts occurring under color of law. 42 U.S.C. § 1983. Section 1983 makes no mention of punitive damages whatsoever, though later Supreme Court precedent concluded that punitive damages were impliedly available against individual defendants. *See Smith v. Wade*, 461 U.S. 30, 35-36 (1983).

In *Fact Concerts*, the Court concluded that punitive damages were not available against municipal defendants, but its holding was cabined to the context of Section 1983. Critically, the Court started with the fact that Section 1983 did not have a punitive damages provision. It stated, "[t]he general rule today is that no punitive damages are allowed unless expressly authorized by statute." 453 U.S. at 260 n.21. Since Section 1983 did not contemplate punitive damages, and since the

---

award to the plaintiff actual and punitive damages'") (emphasis in original); *Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*, 958 F. Supp. 1320, 1331-32 (N.D. Ill. 1997) (allowing punitive damages claim against municipality to proceed to trial to "develop evidence of residents' knowledge and participation at trial").

common law understanding at the time of the statute's enactment was that municipalities were immune from punitive damages, the Court emphasized "the familiar assumption that Congress would have specifically so provided had it wished to abolish the doctrine." *Id.* at 263 (quoting *Pierson v. Ray*, 386 U.S. 547, 555 (1967)).

The Court next found that Section 1983's history indicated that legislators did not understand the statute to provide an implied punitive damages remedy against municipalities. The Court considered statements made by legislators that indicated that they were wary of exposing municipalities to punitive damages. *See, e.g.*, *id*. at 265 (including quote from legislator confirming that exclusion of punitive damages was not oversight).

Finally, the Court turned to public policy considerations, specifically the "relationship" of punitive damages to "the goals of § 1983." *Id.* at 267. It found that, practically speaking, an award of punitive damages against a municipality "'punishes' only the taxpayers" who pay the bill. *Id.* at 267. This, the Court noted, would pose a problem when those taxpayers "took no part in the commission of the tort." *Id.*; *see also id.* (noting that retribution should not "be visited upon the shoulders of blameless or unknowing taxpayers").

Cromwell also cites to *Barnes v. Gorman*, where the Supreme Court considered whether the implied rights of action under Title II of the ADA, 42

43

U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, contained an implied punitive damages provision. 536 U.S. 181. Neither Title II (covering public entities) nor Section 504 (covering recipients of federal funding) mentions punitive damages, so the Court also considered the text and history surrounding Title VI, 42 U.S.C. § 2000d *et seq.*, which those statutes incorporate by reference. *Id.* at 184-85.

The Court's finding that these statutes do not provide for punitive damages was again grounded in the particular statutory text and history at issue. The Court first noted that Title VI "mentions no remedies—indeed, it fails to mention even a private right of action[.]" *Barnes*, 536 U.S. at 187. Then, because Title VI was based in contract law, the Court looked to contract common law, under which punitive damages would not have been available. *Id.* at 188. Under these circumstances, the Court declined to imply a punitive damages remedy.

Against this backdrop, Cromwell holds out *Fact Concerts* and *Barnes* for the blanket proposition that "it is well settled that municipalities are immune from punitive damages." Appellant's Br. at 41. This fails on multiple levels. As a preliminary matter, *Barnes* contains no observation whatsoever on **municipal** immunity to punitive damages; rather, the Court found that the relevant statutes did not provide for punitive damages against **any** defendant. Moreover, both cases' holdings on the availability of punitive damages were inextricably tied to the

44

statutory text, legislative history, and policy considerations of the statutes at issue—and, as discussed below, applying their principles to the FHA would produce the opposite result.

First, the text of the FHA differs substantially from Section 1983. While Section 1983 does not make any reference to punitive damages whatsoever, the FHA states plainly that punitive damages are available without limitation, 42 U.S.C. § 3613(c), and "applies on its face to anyone[,]" *Space Hunters*, 429 F.3d at 424; *see also Gares v. Willingboro Twp.*, 90 F.3d 720, 726 (3d Cir. 1996) (noting that where state law damages provision did not exempt municipalities from punitive damages, "plain language of the statute" should be read to include them). Likewise, Title II and Section 504, at issue in *Barnes*, do not mention a private cause of action at all, let alone punitive damages, and are thus doubly silent.

Second, the legislative history of the FHA vastly differs from Section 1983's. In fact, the FHA was "passed almost one hundred years after the initial enactment of [Section] 1983, and there is no similar legislative history." *United States v. City of Black Jack, Missouri*, 508 F.2d 1179, 1183 (8th Cir. 1974) (rejecting defendant's attempt to exempt municipalities from liability under FHA and finding that case law involving Section 1983 was irrelevant). Whereas the legislative history accompanying Section 1983 demonstrated an expressed resistance by legislators to extending punitive damages liability to municipalities,

45

there is no record of any such resistance in the FHA's legislative history. To the contrary, the Supreme Court has observed that the FHA was enacted in substantial part to eradicate discriminatory practices by municipal actors. *See Inclusive Communities Project*, 576 U.S. at 521, 539 (referring to "zoning laws"—which can only be put in place by municipalities—and "[s]uits targeting such practices" as being "at the heartland" of FHA liability).

While there is little legislative history around the initial passage of the FHA, the 1988 amendments are informative in at least two ways. *See, e.g.*, *id.* at 535-36 (relying on legislative history from the 1988 Fair Housing Amendments Act to determine that the Act encompasses disparate impact). First, Congress stated explicitly that enforcement against discriminatory municipalities was vital to fulfilling the purposes of the FHA. The House Report affirmed that its provisions apply with full force to municipalities; indeed, an amendment to shield local governments from liability arising out of certain zoning decisions was rejected. *See* House Report, at 89; *see also id.* at 24 ("The Committee intends that the prohibition against discrimination against those with handicaps apply to zoning decisions and practices."). Second, at the same time it affirmed the centrality of municipal liability, Congress amended Section 3613(c), the punitive damages provision. This amendment made Section 3613(c) more powerful by eliminating the prior $1,000 cap—all while keeping the class of defendants facing exposure

fully intact. Fair Housing Amendments Act of 1988, 102 Stat. 1619; *see also* House Report, at 40 (Congress intended that "courts be able to award **all remedies** provided under this section.") (emphasis added). As the Supreme Court has previously concluded in the False Claims Act context, "[i]t is simply not plausible that Congress intended to repeal municipal liability *sub silentio* by the very Act it passed to strengthen the Government's hand in fighting [those claims]." *Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 130, 133-34 (2003).

Finally, the public policy principles articulated by *Fact Concerts* are different from those implicated by the FHA. In *Fact Concerts*, the Court found that many Section 1983 cases involve one-off decisions by state actors that were "unknow[n]" by "blameless" taxpayers. 453 U.S. at 267. But, as the district court concluded, the FHA often implicates sustained, joint misbehavior involving municipal actors and the taxpayers they represent. *See Gilead*, 432 F. Supp. 3d at 91 ("Congress passed the Fair Housing Act with at least a partial goal of dismantling the discriminatory housing practices which were created and controlled by municipalities") (listing cases). Indeed, the instant evidentiary record shows just how much it differs from *Fact Concerts. See infra* at 48-51 (describing evidence of taxpayer participation in campaign against Gilead). Far from the "blameless, unknowing" taxpayers protected by *Fact Concerts*, the "uproar[ious]" and "angry" taxpayers of Cromwell were a central part of the Town's defense. JA

47

at A370 (Trial Tr. at 682); *see supra* at 34-35. This factor weighs in favor of Appellees as well.

### B. The District Court Correctly Allowed the Jury to Consider Punitive Damages under the Facts of This Case.

Cromwell turns next to the factual record in this case, arguing that there was insufficient evidence of taxpayer misconduct to justify an exception under *Fact Concerts*. Appellant's Br. at 43. This is wrong on both law and facts.

As discussed *supra*, part of the *Fact Concerts* holding relied on the Court's finding that Section 1983 claims often involved blameless and unknowing taxpayers that did not deserve to be punished as a consequence of the municipal actor's discriminatory acts. 453 U.S. at 267. But the Court then went on to observe in a footnote that—even in the context of Section 1983—"[i]t is perhaps possible to imagine an extreme situation where the taxpayers are directly responsible for perpetrating an outrageous abuse of constitutional rights" such that this policy consideration would not weigh in favor of municipalities. *Id.* at 267 n.29. Ultimately, the Court concluded that it need not reach a conclusion on this hypothetical, as it was not presented in that case. *Id.*

Cromwell misstates the import of the *Fact Concerts* footnote as it pertains to the FHA, claiming that the footnote dictates the circumstances that must appear in the FHA context for a municipal actor to face punitive damages. Appellant's Br. at

48

43-44. There is no basis for a wholesale adaptation of this footnote in this manner. While the footnote provides for an exception to Section 1983's limitation on punitive damages, as explained *supra*, it cannot simply be grafted on to the FHA. This Court's analysis ought to rest on the FHA's plain language, statutory history, and public policy, not that of Section 1983. And, because the policy considerations around the FHA are so different from Section 1983's, conducting this analysis will easily disprove Cromwell's argument.[9]

Cromwell stretches the concept even further in its discussion of *Ciraolo v. City of New York*, arguing that the district court should have applied *Ciraolo* in deciding whether to allow the punitive damages question to go to the jury. Appellant's Br. at 43-44. *Ciraolo* is a Section 1983 case, and its reasoning does not apply to the FHA. In any event, the portion of *Ciraolo* cited by Cromwell—which is clearly dicta, *see* 216 F.3d at 250 (Katzmann, J., concurring in part)—does not support its position. The Court provided one example of taxpayer misconduct that could override *Fact Concerts*' prior assumption of taxpayer innocence: "If, for example, a town adopted, by a unanimous vote, a referendum establishing an unconstitutional rule, we can see no reason in the policies discussed in [*Fact*

---

[9] To be clear, this is not to say that taxpayer misconduct is irrelevant under the FHA, just that it need not be identical to the standard identified in *Fact Concerts* and *Ciraolo v. City of New York*, 216 F.3d 236, 238 (2d Cir. 2000).

*Concerts*] why punitive damages ought not to be awarded." *Id*. at 241. This was just one example, not, as Cromwell claims, a threshold requirement.

The remainder of Cromwell's argument boils down to its insistence that only a "small group of taxpayers" participated in the effort to take down Gilead's group home. Appellant's Br. at 44. This argument, an unabashed attempt to relitigate the trial, was resoundingly rejected by the district court:

> [T]here is nothing in the record to support its claim of opposition to the group home being limited to a "small bloc of voters." Instead, everything in this record suggests—and the jury reasonably could have concluded—that the Town of Cromwell, along with every Town official . . . as well as a significant number of its taxpayers, wanted to drive the planned Gilead group home out of town.

SA at 29; *see also id.* at 27-31 (citing to evidentiary record); *Gilead*, 432 F. Supp. 3d at 90; JA at A320-21, A360 (Trial Tr. at 488-89, 659) (testimony from Re Matus, senior executive assistant to the Mayor and Town Manager, and from the Mayor himself that he received more citizen calls and communications regarding the 5 Reiman home issue than any other issue); *Id.* at A856 (Pls. Ex. 102a at 3) (Reiman Strong Facebook post noting that "Town leaders are actively working to prevent" Gilead home); *Id.* at A297-A303, A366-68 (Trial Tr. at 345-51, 678-80) (testimony by Cromwell leadership that the group home was not popular with residents and that local politicians ran successfully on opposing the home during elections). A "federal court of appeals reviewing a district court's decision

50

concerning a jury's punitive damages award reviews for abuse of discretion." *Payne v. Jones*, 711 F.3d 85, 97 (2d Cir. 2013). There is ample evidence on the record that Cromwell taxpayers not only participated in the Town's misdeeds but actually caused them. There is no basis to overturn the district court's (and the jury's) well-supported finding.

## IV. The Jury's Well-Reasoned Punitive Damages Award Should Be Affirmed.

The district court properly found that the $5 million punitive damages award rendered by the jury was reasonable. In doing so, the court considered the three "guideposts" set forth by the Supreme Court in *BMW of North America, Inc. v. Gore*: (1) "the degree of reprehensibility" associated with the defendant's actions; (2) "the disparity between the harm or potential harm suffered" and the size of the punitive award; and (3) the difference between the remedy in this case and the available civil penalties. 517 U.S. 559, 575 (1996). The district court found that the factual evidence introduced at trial supported the jury's finding and concluded that the award did not violate Cromwell's due process. SA at 37-39. "The factual findings made by the district courts in conducting the excessiveness inquiry, of course, must be accepted unless clearly erroneous." *United States v. Bajakajian*, 524 U.S. 321, 336 n.10 (1998). Because Cromwell cannot make this showing, the district court's holding should be affirmed.

51

The first and "most important indicium of the reasonableness of a punitive damages award" is the reprehensibility of the conduct. *Gore,* 517 U.S. at 575.

The district court found strong evidence of "highly reprehensible" conduct by the Town. SA at 35-37. It referred to, *inter alia*, the Town police leaking the intended residents' sensitive medical diagnoses to the local paper; the celebration by Town officials when the home closed; and the testimony by a Town employee that the tax assessment action taken against the home was justified and that a subsequent state Supreme Court decision did not change her mind. *Id.* at 33. The district court also pointed to the financial vulnerability of the plaintiffs and the people they serve. *Id.* It concluded, "The jury found the Town of Cromwell's conduct to be 'highly reprehensible,' for the reasons stated in Plaintiffs' opposition, and there is no basis for this Court to disagree." *Id.* at 35. Cromwell's attempts to minimize the scope of its bad conduct, *see* Appellant's Br. at 48-49, fail. The question is whether the district court's review of the record and subsequent findings were in clear error, and Cromwell cannot meet this burden.

The second guidepost is described as "the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 424 (2003). In performing this inquiry, the Supreme Court has cautioned against imposing "rigid benchmarks that a punitive damages award may not surpass," *id.* at 425, and courts have regularly upheld

punitive damages awards with comparable or higher ratios than this case's. *See Kennedy v. Supreme Forest Prod., Inc.*, 761 F. App'x 72, 74, 77 (2d Cir. 2019) (Summary Order) (21:1 ratio); *see also Lincoln v. Case*, 340 F.3d 283, 287, 293-94 (5th Cir. 2003) (110:1 ratio in FHA case); *United States v. Big D Enter., Inc.*, 184 F.3d 924, 928 (8th Cir. 1999) (100:1 ratio in FHA case); *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1266 (10th Cir. 2000) (59:1 ratio in Title VII case).

The ratio analysis should consider not only the compensatory damages amount rendered by the jury, but also the magnitude of the potential harm. *See TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 460 (1993) ("It is appropriate to consider the magnitude of the *potential* harm that the defendant's conduct would have caused to its intended victim if the wrongful plan had succeeded, as well as the possible harm to other victims that might have resulted if similar future behavior were not deterred.") (emphasis in original). In *Kennedy*, the jury had awarded the plaintiff $11,900 in compensatory damages and $250,000 in punitive damages for his wrongful termination. 761 F. App'x at 74. The Second Circuit noted that the harm caused by a job termination could potentially have been as much as $250,000; thus, the ratio guidepost "squarely support[ed] the punitive damages award." *Id.* at 77; *see also Tronzo v. Biomet, Inc*., 236 F.3d 1342, 1350 (Fed. Cir. 2001) ("[T]here is a strong suggestion in the record that the potential

compensatory damages may have been much higher than what was actually awarded. . . Accordingly, we conclude that the district court erred in reducing the amount of punitive damages[.]"); *Johnson v. Howard*, 24 F. App'x 480, 486-87 (6th Cir. 2001).

This Court has recognized that cases involving civil rights violations often require juries to quantify discrimination-related injuries "whose monetary value is 'difficult to determine.'" *Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir. 1996) (quoting *Gore,* 517 U.S. at 582). The reasoning is simple: it is difficult for a jury to quantify discrimination-related damages, for example, the emotional distress suffered by a victim of discrimination or the effect on an organizational mission resulting from a lost opportunity. In *Lincoln,* the Fifth Circuit noted in the FHA context that "'the inherently low or hard-to-determine actual injuries' in housing discrimination cases and the important goal of deterring future wrongdoing" justify a "high ratio of punitives to compensatory damages." *Lincoln*, 340 F.3d at 293-94.

In considering the second guidepost, the district court found that the potential damages suffered by Gilead were both substantial and difficult to quantify:

> In this case, in addition to the specifically identified damages of $180,161.22 in out-of-pocket damages to Gilead, an amount found to be compensable by the jury's $181,000 compensatory damages award, Gilead had to forfeit a yearly contract worth over $800,000, a loss estimated at trial to result in nearly $5 million dollars in losses. In

> addition, this case involved not easily calculated and significant non-economic harm, such as the significant diversion of time of Daniel Osborne, the Chief Executive Officer of Gilead, to this one group home, . . . as well as the loss of housing by residents desperately in need of these services, as indicated by the testimony of [multiple] witnesses[.]

SA at 38 (internal citations omitted). In other words, the district court credited trial testimony regarding potential non-pecuniary damages (including a lost contract, diversion of staff time, and frustration of mission) that was estimated to be nearly $5 million dollars. The court ultimately concluded, "[W]hile $5 million dollars is a substantial award by any measure, when the Court compares 'actual *and potential* damages to the punitive award'—as this Court must—this punitive damages award cannot be considered 'grossly excessive.'" *Id.* at 39 (quoting *Gore*, 517 U.S. at 582) (emphasis in original).

Cromwell conveniently ignores the various types of non-pecuniary damages described by the district court, limiting available compensatory damages to out-of-pocket damages only. Appellant's Br. at 47. Moreover, none of the (factually inapposite) cases it cites involve evidence of potential harm, even though this was a crucial finding by the district court. *See, e.g.*, *F.D.I.C. v. Hamilton*, 122 F.3d 854, 861 (10th Cir. 1997) (breach of contract case); *Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 754 (11th Cir. 2020) (Fair Credit Reporting Act); *Mendez-Matos v. Municipality of Guaynabo*, 557 F.3d 36 (1st Cir. 2009) (Section 1983). "[T]he propriety of the ratio can vary enormously with the

particular facts of the case." *Payne*, 711 F.3d at 102. Cromwell "carr[ies] the burden" to show that the jury's damages award was excessive, *Pappas v. New Haven Police Dep't*, 278 F. Supp. 2d 296, 311 (D. Conn. 2003), and it has failed to do so.

Finally, Cromwell does not address the third guidepost, the comparison between the punitive damages award and the damages available, but this factor weighs in Appellees' favor because the FHA sets no limitation on the amount of punitive damages available. *See Parris v. Pappas*, 844 F. Supp. 2d 271, 283 (D. Conn. 2012); *Broome v. Biondi*, 17 F. Supp. 2d 211, 229 (S.D.N.Y. 1997).

In sum, the jury's punitive damages award is reasonable and well-supported by the evidentiary record, and there is no basis to overturn the district court's ruling.

## V.     The Town of Cromwell Can Be Held Vicariously Liable For the Actions of its Employees, Officers, and Agents.

Finally, Cromwell asks this Court to ignore both Supreme Court and Second Circuit precedent to find that vicarious liability does not apply to Cromwell. The Supreme Court is unambiguous that vicarious liability applies under the FHA. In *Meyer v. Holley*, the Court found that the FHA imposes liability "in accordance with traditional agency principles, *i.e.*, it normally imposes vicarious liability[.]" 537 U.S. 280, 282 (2003). Under *Meyer*, there is no question that Cromwell can be

held vicariously liable for the actions of its employees and public officials under traditional agency principles. *See also* 24 C.F.R. § 100.7 ("A person is vicariously liable for a discriminatory housing practice by the person's agent or employee . . . **consistent with agency law**.") (emphasis added).

Cromwell argues, however, that it should not be subject to vicarious liability because the Supreme Court and the Second Circuit have not addressed whether a municipality, specifically, can be held liable for the actions of its employees, officers, and agents under the FHA. Appellant's Br. at 49-52. But Cromwell cannot point to any FHA cases, circuit or district, indicating that differential treatment for municipalities is warranted under the FHA.

In *Meyer*, the Supreme Court made clear, without qualification or exception, that vicarious liability rules apply to FHA claims. *Meyer*, 537 U.S. at 285. Consistent with *Meyer*, the Second Circuit has repeatedly affirmed claims under which a municipality was held liable under the FHA for discrimination based on the acts of municipal officials and employees performed within the scope of their duties. *See LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 428 (2d Cir. 1995) (affirming jury verdict holding village liable for officials' actions even though individual defendants were entitled to legislative immunity for same vote); *Anderson Grp., LLC v. Lenz*, 336 F. App'x 21, 23 (2d Cir. 2009) (Summary Order) (affirming district court's denial of legislative immunity as to individually sued

city councilmembers and ordering trial for municipality and individual defendants); *United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181, 1223-24 (2d Cir. 1987) (holding city liable for decisions by City Council members causing segregation).

Cromwell's only support for its argument comes from *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), which addressed Section 1983, a statute that, as previously discussed, is distinguishable from the FHA in numerous ways. In *Monell*, the Supreme Court found that municipalities "cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 659. *Monell* was based on that particular statute's legislative history, and "[w]ith respect to other civil rights statutes, the general rule is that respondeat superior does apply." *People Helpers, Inc. v. City of Richmond*, 789 F. Supp. 725, 733 (E.D. Va. 1992) (citing *Bonner v. Lewis*, 857 F.2d 559, 566 (9th Cir. 1988); *Patton v. Dumpson*, 498 F.Supp. 933, 942 (S.D.N.Y. 1980)); *see also Valley Hous. LP v. City of Derby*, 802 F. Supp. 2d 359, 385 (D. Conn. 2011) (holding a municipality liable under the FHA and ADA for acts of municipal employees). Notably, *Monell* was decided before *Meyer* and the Second Circuit FHA cases cited *supra*, such that these courts were aware of *Monell* when they allowed vicarious liability claims to proceed under the FHA.

Cromwell points to no cases applying *Monell* to the FHA or interpreting *Meyer* to limit vicarious liability in any way. Because Supreme Court precedent requires that Cromwell be held vicariously liable for its officials' actions, the district court's holding regarding vicarious liability should be affirmed.

## **CONCLUSION**

For the reasons stated above, the jury's verdict should remain and the district court's Post-Trial Order should be affirmed in its entirety.

59

Dated: February 1, 2023                    Respectfully Submitted,

                                           /s/ Tara K. Ramchandani
                                           Tara K. Ramchandani
                                           Yiyang Wu
                                           Valerie Comenencia Ortiz
                                           Gemma Donofrio
                                           RELMAN COLFAX PLLC
                                           1225 19th Street, N.W., Suite 600
                                           Washington, DC 20036
                                           Phone: (202) 728-1888
                                           tramchandani@relmanlaw.com
                                           ywu@relmanlaw.com
                                           vcomenenciaortiz@relmanlaw.com
                                           gdonofrio@relmanlaw.com

                                           *Counsel for Appellees*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

GILEAD COMMUNITY SERVICES, INC., *et al.*,

      Plaintiffs/Appellees,

      v.

TOWN OF CROMWELL,

      Defendant/Appellant.

**CERTIFICATE OF COMPLIANCE**

Civil Action No. 22-1209

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and Local Rule 32.1(a)(4)(A), the undersigned certifies that this brief complies with the applicable type-volume limitations. Exclusive of the portions exempted by Rule 32(f), this brief contains 13,926 words. This certificate was prepared in reliance upon the word-count function of the word processing system (Microsoft Word 365 16.01.14931.20806 64-bit) used to prepare this brief. This brief complies with the typeface and typestyle requirements of Rule 32(a)(5) and (6) of the Federal Rules of Appellate Procedure because it has been prepared in a proportionally spaced typeface using font size 14 Times New Roman.

/s/ Tara K. Ramchandani
Tara K. Ramchandani
RELMAN COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, DC 20036
Phone: (202) 728-1888
tramchandani@relmanlaw.com

*Counsel for Appellees*

61

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

| | |
|---|---|
| GILEAD COMMUNITY SERVICES, INC., *et al.*, | |
| Plaintiffs/Appellees, | **CERTIFICATE OF SERVICE** |
| v. | Civil Action No. 22-1209 |
| TOWN OF CROMWELL, | |
| Defendant/Appellant. | |

I, Tara K. Ramchandani, hereby certify under penalty of perjury that on February 1, 2023, the foregoing Final Form Brief of Appellees was electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following counsel of record:

Thomas R. Gerarde
Howd & Ludorf, LLC

*Counsel for Appellant*

February 1, 2023

/s/ Tara K. Ramchandani
Tara K. Ramchandani
RELMAN COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, DC 20036
Phone: (202) 728-1888
tramchandani@relmanlaw.com

*Counsel for Appellees*